# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00757-CV

**Danny Ray Cline, Appellant**

**v.**

**Texas Board of Criminal Justice, Texas Department of Criminal Justice, Alan Polunsky, and Wayne Scott, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. 9909908, HONORABLE PATRICK KEEL, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Danny Ray Cline, an inmate in the Texas Department of Criminal Justice Institutional Division, appeals from the trial court's dismissal of his lawsuit against the Department and three individual State officers[1] for alleged violations of his civil rights, in which he complained that changes to the Department's policies related to good-conduct time ("GCT") violated his rights.[2] We affirm the trial court's order of dismissal.

---

[1] Cline sued "Texas Board of Criminal Justice aka Alan Polunsky, Chairman," and "Texas Department of Criminal Justice - Institutional Division aka Wayne Scott, Executive Director and aka Gary Johnson, Director of Operations." We will refer to all appellees as "the Department."

[2] Inmates in the Department accrue "good conduct time" while they are classified as a trusty or a class I or II inmate; an inmate's classification depends on his behavior while in custody. *See* Tex. Gov't Code Ann. §§ 498.001-.003 (West 2004).

Cline has been in the Department's custody since 1988, serving a fifty-year sentence for an arson he committed in 1986. Before 1993, the Department's GCT policy allowed for the restoration of GCT revoked due to disciplinary infractions. Restoration of GCT was discretionary, but Cline asserted that GCT was regularly restored as a matter of course. In 1993, the Department adopted a new policy under which GCT lost due to disciplinary violations would no longer be restored.[3] Cline alleged that between 1989 and 1993, as punishment for disciplinary infractions, the Department suspended 2,535 days of his GCT and wrongfully refuses to restore those credits.

Cline filed suit in August 1999, seeking in part a declaratory judgment that the Department abused its discretion in refusing to reinstate his revoked GCT and that he was entitled to credit for seven years of GCT.[4] Cline filed his suit as an indigent under chapter 14 of the civil practice and remedies code, which governs lawsuits filed by indigent inmates. *See* Tex. Civ. Prac.

---

[3] Up until 1995, the legislature left the restoration of revoked GCT to the Department's discretion. *See, e.g.*, Act of March 25, 1991, 72d Leg., R.S., ch. 16, § 10.01(a), 1991 Tex. Gen. Laws 244, 298. However, in 1995, the legislature amended the statutes to provide that, for offenses committed on or after September 1, 1995, the Department may not restore revoked GCT. *See* Tex. Gov't Code Ann. § 498.004 (West 2004).

[4] Although on appeal Cline argues only that the policy against reinstating revoked GCT is unlawful, in his original petition he asserted various other claims, including that he was entitled to certain credits for program participation and overcrowded prison conditions, that the Department erred in its calculation of GCT revoked due to disciplinary infractions, and that Department policies related to disciplinary proceedings were unlawful. Cline asserted that the trial court had jurisdiction over his claims under: (1) constitutional and statutory provisions governing a trial court's general jurisdiction, *see* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. §§ 24.007, .008, .011 (West 2004); (2) constitutional provisions governing due process, open courts, and cruel and unusual punishment, *see* Tex. Const. art. I, § 13; (3) chapter 104 of the civil practice and remedies code, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 104.001-.009 (West 2005), which provides that the State will indemnify its employees or officials for conduct in the course and scope of their office or employment, but does not create an independent cause of action or waive any immunity or defense, *see Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 108 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.); and (4) the federal statutes allowing an individual to sue for civil rights violations and a trial court to exercise jurisdiction over such suits, *see* 28 U.S.C.A. § 1343 (West 1993); 42 U.S.C.A. § 1983 (West 2003).

2

& Rem. Code Ann. §§ 14.001-.014 (West 2002). After several motions to dismiss filed by the Department and two motions for summary judgment filed by Cline, the trial court dismissed Cline's suit.[5] On appeal, Cline asserts that the Department lacked the authority to change its rules to refuse to reinstate GCT revoked for disciplinary infractions, arguing that the rule change altered the "original legislative contract" under which he was sentenced. The improper rule change, he argues, resulted in an additional 2,535 days being added to his sentence, and he asserts that he is entitled to equitable relief or compensation for the time he has been imprisoned past May 15, 2003, which he asserts is the date on which he "fulfilled the terms of the contract with the State." Cline argues that the trial court erred in dismissing his suit and refusing to grant summary judgment in his favor, grant his request for declaratory and injunctive relief, or find that the Department's failure to restore his accrued GCT violated his constitutional rights.

Cline asserts that his case is governed by former revised civil statutes article 6181-1, section 4, as it was written in 1986, when he committed his offense. In 1986, article 6181-1, section 4 provided that an inmate "shall" accrue GCT, depending on his inmate classification. Act of May 27, 1983, 68th Leg., R.S., ch. 375, § 1, 1983 Tex. Gen. Laws 2045, 2045-46 (S.B. 640, amending Tex. Rev. Civ. Stats. art. 6181-1, § 3, in effect in 1986, repealed in 1989, current version at Tex. Gov't Code Ann. § 498.003 (West 2004)). Cline argues that article 6181-1, section 4, as it read in 1986, was made part of his sentence and created a protected liberty interest in his earned GCT by its use of "explicitly mandatory language" and establishment of "specific substantive limitations" on

_____

[5] The Department filed several motions to dismiss, asserting several arguments in support of dismissal. In its order dismissing the suit, the trial court said only that it had concluded that the Department's "motion to dismiss should be GRANTED." The court did not specify which motion it was granting or the grounds for dismissal.

3

official discretion. He contends that he has a constitutionally protected and "state-created entitlement to earn time off the sentence through the provisional good time statute." Cline argues that under article 6181-1, section 3, the Department had no authority to refuse to reinstate his revoked GCT, and contends that the trial court erred in dismissing his suit as frivolous under chapter 14 of the civil practice and remedies code.

Chapter 14 applies to litigation brought by an inmate who seeks to proceed as a pauper, either through an affidavit or an unsworn declaration of his inability to pay costs. Tex. Civ. Prac. & Rem. Code Ann. § 14.002(a). In such a case, the trial court may dismiss a claim at any time if the court finds that the claim is frivolous or malicious. *Id*. § 14.003(a)(2). In deciding whether an inmate's claim is frivolous, the trial court may consider the inmate's realistic chance of ultimate success, whether the claim has an arguable basis in law or fact, whether the inmate can prove facts in support of his claim, or whether the claim is substantially similar to and arises from the same facts as another claim already brought by the inmate.[6] *Id*. § 14.003(b). A hearing on a motion to dismiss an inmate's claims as frivolous is not mandatory and is left to the trial court's discretion. *Thomas v. Wichita Gen. Hosp.*, 952 S.W.2d 936, 938 (Tex. App.—Fort Worth 1997, pet. denied). If the court does not hold a fact hearing, dismissal is proper only if the claim has no arguable basis in law, a determination we review de novo. *Retzlaff v. Texas Dep't of Criminal Justice*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

Cline asserts that the legislature provided a "statutory provision for 'earning time off the sentence,'" and did not intend for Cline to serve "25 calendar years in prison on a 50 year

---

[6] Courts are discouraged from relying on the "realistic chance" or "prove facts" factors in deciding that a claim is frivolous. *Johnson v. Lynaugh*, 796 S.W.2d 705, 706 (Tex. 1990); *Bohannan v. Texas Bd. of Crim. Justice*, 942 S.W.2d 113, 115 (Tex. App.—Austin 1997, writ denied).

sentence as 'punishment' for the crime." However, the 1986 version of article 6181-1, section 3 did not provide that an inmate may earn "time off" his sentence; it explained the rate at which an inmate accrued good conduct time, depending on his classification. *See* Act of May 27, 1983, 1983 Tex. Gen. Laws at 2045-46.[7] GCT, as described in the other statutes in effect in 1986, is a privilege, not a right, applies only to eligibility for parole or mandatory supervision, and does not otherwise affect an inmate's sentence. *See* Act of May 25, 1985, 69th Leg., R.S., ch. 835, § 1, 1985 Tex. Gen. Laws 2900, 2900-01 (repealed in 1989, current version at Tex. Gov't Code Ann. §§ 498.003(a), .004 (West 2004)). Further, at the time of Cline's offense, the law provided that GCT could be revoked due to misbehavior and that restoration of revoked GCT was discretionary. *See id*.

Cline's appellate complaints all rely on the argument that he has a vested liberty or property interest in his earned GCT. However, the court of criminal appeals has held that inmates have no vested liberty or property interest in their GCT or in the reinstatement of revoked GCT. *Ex parte Montgomery*, 894 S.W.2d 324, 328-29 (Tex. Crim. App. 1995); *Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex. Crim. App. 1983); *see also Turner v. Johnson*, 46 F. Supp. 2d 655, 671 (S.D. Tex. 1999) (between 1977 and 1993, Department had complete and unrestricted discretion to reinstate revoked GCT, which "dispels the notion of a liberty interest"; inmate's interest in having revoked GCT restored was "merely speculative, as it was dependent on a number of factors").[8] Since

---

[7] Article 6181-1 was repealed in 1989, and chapter 497, later amended to be chapter 498, of the government code was enacted in its place. *See* Act of May 11, 1989, 71st Leg., R.S., ch. 212, §§ 2.01, 3.03, 1989 Tex. Gen. Laws 918, 943-44, 968. Currently, section 498.003 explains the rate at which an inmate accrues GCT and provides that GCT is a privilege, not a right, and only applies to eligibility for parole or mandatory supervision. *See* Tex. Gov't Code Ann. § 498.003.

[8] Once an inmate has accrued enough GCT, however, he does have a legitimate, albeit limited, vested liberty interest in being released on mandatory supervision. *Ex parte Geiken*, 28 S.W.3d 553, 558-59 (Tex. Crim. App. 2000).

1977, when article 6181-1 was first enacted, the statute has explicitly stated that GCT is a privilege, not a right, and is subject to revocation for disciplinary infractions. *See* Act of May 25, 1985, 1985 Tex. Gen. Laws at 2900-01; Act of May 30, 1977, 65th Leg., R.S., ch. 347, § 3, 1977 Tex. Gen. Laws 925, 932 (enacting art. 6181-1, repealed in 1989, current version at Tex. Gov't Code Ann. §§ 498.001-.005 (West 2004 & Supp. 2005)); *Henderson*, 645 S.W.2d at 472. Although the 1986 statutes used mandatory language in describing the rate at which inmates accrue GCT, depending on their classification, they also clearly provided that credits could be lost and that restoration of lost credits was left solely to the Department's discretion. Act of May 25, 1985, 1985 Tex. Gen. Laws at 2900-01; *Montgomery*, 894 S.W.2d at 328; *see Ex parte Morris*, 626 S.W.2d 754, 757 (Tex. Crim. App. 1982) ("[T]hough good conduct time credit may be 'earned' by an inmate's good behavior and efficient performance of duties during incarceration, this credit does not become vested. Thus, though good conduct time may be accumulated, it may also be forfeited by the inmate for committing an offense or violating a rule or regulation."). Before the 1993 rule and 1995 legislative amendments, revoked GCT could be reinstated, but reinstatement was discretionary and there were no limits placed on the exercise of that discretion. Act of May 25, 1985, 1985 Tex. Gen. Laws at 2900-01; *Montgomery*, 894 S.W.2d at 328; *see Turner*, 46 F. Supp. 2d. at 671. Therefore, Cline has no property or liberty interest in his earned but revoked GCT.[9]

---

[9] Cline relies on *Bohannan*, in which an inmate argued that the pre-1995 section 498.005 created a vested property right, and we held that the argument was not frivolous because it had not been judicially decided whether the Board had to find a decrease in overcrowding before it could cease restoration of revoked GCT. 942 S.W.2d at 119. However, we also noted that an inmate does not have a vested property interest in his GCT. *See id.* (citing *Ex parte Montgomery*, 894 S.W.2d 324, 328-29 (Tex. Crim. App. 1995)); *see also Spaulding v. Johnson*, No. 03-02-00338-CV, 2003 Tex. App. LEXIS 9208, at *10-11 (Tex. App.—Austin Oct. 30, 2003, pet. filed) (mem. op.) (noting that overcrowding was one factor to consider in reviewing reinstatement policies, but stating that "statute does not seem to mandate that the Board could cease the restoration of good conduct time

Nor did the amendments doing away with reinstatement of credits increase the punishment assessed against Cline.  *See Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994); *Turner*, 46 F. Supp. 2d at 672-73.  GCT does not reduce an inmate's sentence and has no effect beyond determining eligibility for parole or mandatory supervision eligibility.  *Hallmark*, 883 S.W.2d at 674; *Turner*, 46 F. Supp. 2d at 672.  Before the 1993 rule changes and 1995 legislative amendments, the restoration of revoked GTC was discretionary and speculative, even if under the Department's policy it was usually restored.  *Turner*, 46 F. Supp. 2d at 671-72.

Because the law is clear that an inmate has no vested right to earned GCT, Cline's claims, all of which rely on that assertion, have no legal basis.  Therefore, the trial court did not err in dismissing Cline's suit.  We affirm the trial court's order of dismissal.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   April 14, 2006

---

only if overcrowding decreased").  We note that the language requiring review of reinstatement policies and referring to overcrowding as a factor in that review was not added until 1987, after Cline committed his offense.  *See* Act of May 25, 1987, 70th Leg., R.S., ch. 384, §§ 1, 4, 1987 Tex. Gen. Laws 1887, 1887-89.